

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MATTHEW JOHN CASANOVA, | § | No. 08-10-00006-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 163rd District Court |
| | § | |
| THE STATE OF TEXAS, | § | of Orange County, Texas |
| | § | |
| Appellee. | § | (TC# B090255-R) |
| | § | |

**O P I N I O N**

After a jury convicted Appellant, Matthew John Casanova, of possession of a controlled substance, cocaine, and sentenced him to confinement for one year, he appealed raising three issues.[1]  Because we determined that Appellant suffered egregious harm under Issue Two, we declined to address Issues One and Three.  *See Casanova v. State*, No. 08-10-00006-CR, 2011 WL 3849453, at *6-7 (Tex.App. – El Paso Aug. 31, 2011, pet. granted) (not designated for publication).  Upon the State's appeal, the Court of Criminal Appeals reversed the judgment of this Court and remanded the cause to permit us to address Appellant's first issue.  *See Casanova v. State*, 383 S.W.3d 530 (Tex.Crim.App. 2012).

---

[1]  As this case was transferred from our sister court in Beaumont, we decide it in accordance with the precedent of that court. TEX.R.APP.P. 41.3.

**DISCUSSION**

In Issue One, Appellant complains the trial court erroneously restricted his voir dire examination of the venire panel regarding the relevant burden of proof applicable to his case. The State filed a pretrial motion in limine, which the court granted. The motion contained a provision requiring Appellant to first consult with the court outside the presence of the jury before comparing standards of proof or mentioning that the State's burden was greater than that necessary to remove children from their parents.

During voir dire, the State reiterated the trial court's statement that the State's burden of proof in a criminal case is proof beyond a reasonable doubt. Appellant complains that although the State was permitted to present its view of the beyond a reasonable doubt burden of proof by comparing it to the common sense and life experiences one implements in making decisions regarding whether to proceed with critical surgery, the trial court denied his request to compare the criminal burden of proof with that of the lesser civil burden of clear and convincing evidence that must be met when "one decides whether or not to take a child from a parent." Appellant asserts the trial court's denial of this request restricted his ability to fully and properly conduct a voir dire examination on the burden of proof and constituted reversible and harmful error which denied him basic and fundamental constitutional rights.

*Analysis*

We review a trial court's limitation of voir dire for abuse of discretion. *Fuller v. State*, 363 S.W.3d 583, 585 (Tex.Crim.App. 2012). A trial court abuses its discretion by prohibiting a proper question about a proper area of inquiry. *Id.* A proper question seeks to discover a juror's views on an issue applicable to the case. *Id.* An improper question is one that attempts to

2

commit the juror to a particular verdict based on particular facts or one that is so vague or broad as to constitute a global fishing expedition. *Id.*

After the Court of Criminal Appeals granted the State's petition for discretionary review of our initial opinion in this case, the Court of Criminal Appeals issued its opinion in *Fuller v. State*, 363 S.W.3d 583, 587 (Tex.Crim.App. 2012), in which the Court considered this very question and stated:

> The jury's ability to apply the correct standard of proof remains an issue in every criminal case. . . . [a]nd it strikes us as particularly apt to inquire whether a prospective juror understands that proof beyond a reasonable doubt must *at least* constitute a more onerous standard of proof than preponderance of the evidence and clear and convincing evidence. It is but the flip side of the inquiry that prosecutors engage in routinely during voir dire, designed to test whether prospective jurors will hold the State to the inappropriately onerous standard of proof beyond *all* doubt. While neither area of inquiry purports to assign a precise meaning to the term "reasonable doubt"—leaving that for the jurors themselves to supply, according to their own common-sense understanding of the words—they do serve to set the lawful parameters of reasonable doubt and thereby foster the selection of jurors who will not impose a standard of proof upon the State that they know for sure to be either too lenient (preponderance or even clear and convincing) or too burdensome (*all* doubt)."

*Id*. at 587-88 (emphasis in original). Observing that it has "often said that a trial court has discretion to prohibit an otherwise-proper area of inquiry if the proposed questions are 'so vague or broad in nature as to constitute a global fishing expedition,'" the Court held that principle to be inapplicable under these circumstances and explained that it was appropriate for *Fuller* to explain the contrast among the various standards of proof. *Id*. at 588. "A juror who does not understand this concept may prove unable to abide by it, and a juror who cannot abide by it cannot follow the law and would thus be challengeable for cause under Article 35.16(c) 2." *Id*. Because appellant's objection to the trial court's ruling embraced a complaint that he was denied the right to ask a question that was "proper . . . for purpose of making [a] . . . challenge for cause," the Court

3

held the trial court abused its discretion and remanded the cause to permit the court of appeals to conduct a harm analysis. *Id*. at 588-89.

In its original brief, which was prepared before *Fuller* issued, the State notes that the only area in which the trial court limited Appellant's voir dire examination was in restricting his ability to compare the criminal standard of proof with that of the civil standard of clear and convincing evidence and to argue that the latter standard requires "more evidence" than is required to remove a child from its parents. The State had argued the civil standard of proof was inapplicable. The State also contends that Appellant "indoctrinated" the venire panel with his interpretation of the beyond a reasonable doubt standard.

Under *Fuller*, the trial court's denial of Appellant's request to compare and ask the venire panel questions regarding its understanding of burdens of proof was non-constitutional error that is subject to a harm analysis under Rule 44.2(b). *See Fuller*, 363 S.W.3d at 587-89; *Rich v. State*, 160 S.W.3d 575, 577 (Tex.Crim.App. 2005); *Jones v. State,* 982 S.W.2d 386, 391–92 (Tex.Crim.App. 1998); *Wilkerson v. State*, 391 S.W.3d 190, 195 (Tex.App. – Eastland 2012, no pet.). Rule 44.2(b) directs that we disregard all non-constitutional errors that do not affect the appellant's substantial rights. TEX.R.APP.P. 44.2(b); *see Rich*, 160 S.W.3d at 577. A substantial right is affected "when the error has a substantial and injurious effect or influence in determining the jury's verdict." *Johnson v. State*, 43 S.W.3d 1, 4 (Tex.Crim.App. 2001). In conducting the required harm analysis, we consider the entire record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments,

4

voir dire, and whether the State emphasized the error.  *Id.* at 577-78.

Among the purposes of voir dire is the elicitation of information that would establish a basis for a challenge for cause because the venireman is legally disqualified from serving or is biased or prejudiced against one of the parties or some aspect of the relevant law, and the facilitation of the intelligent use of peremptory challenges that may be exercised without a reason stated, without inquiry, and without being subject to the court's control.  *See Sanchez v. State*, 165 S.W.3d 707, 710-11 (Tex.Crim.App. 2005); *Wappler v. State*, 183 S.W.3d 765, 772 (Tex.App. – Houston [1st Dist.] 2005, pet. ref'd).

At the commencement of voir dire, the trial court informed the venire panel that Appellant was presumed innocent, that the State had the burden of proving him guilty beyond a reasonable doubt, and specifically explained:

> [The State must] prove each and every element by evidence beyond a reasonable doubt.  Now, the law defines what the elements are . . . [and] . . . will tell you what the [S]tate has to prove. . . . . You have to hold the [S]tate to prove what the law requires them to prove.  And they have to prove it beyond a reasonable doubt, which means when you hear all of the evidence if you are convinced beyond a reasonable doubt you vote guilty.  If you're not convinced beyond a reasonable doubt you vote not guilty.  The law does not define what beyond a reasonable doubt means.  It's up to you to make that decision. . . . .  [T]he law says we're not supposed to [define the term] and the lawyers cannot define that term either.  What it does mean is that as a juror we'll ask you to be a reasonable person and that you make a determination on your own whether you have a reasonable doubt or not in your own mind.  If you have a reasonable doubt left as to the defendant's guilt, you find him not guilty; if you have no reasonable doubt left you convict the defendant.  Does anybody have a problem requiring proof beyond a reasonable doubt?  You think it's too high and you would lower it, or you think it's too low and needs to be higher.  Does anybody have a problem with that?  The [S]tate has to prove it beyond a reasonable doubt?

No member of the venire responded to the court's inquiry.

5

The State explained during voir dire that it was her task to prove each one of the elements of the offense beyond a reasonable doubt, explained that the burden is the same in all criminal cases, noted that use of common sense and knowledge typically relied upon in making important decisions would aid them as jurors, and emphasized that each juror would need to consider whether they had a doubt that an element of the offense was proved and whether that doubt was reasonable. The State informed the jurors that the elements of the offense would be listed in the court's charge to the jury.

Appellant's counsel again explained that Appellant was presumed innocent as the court had previously instructed and that "[o]nly if the [S]tate proves each and every element of this case will he be convicted." Noting that the burden of proof "goes hand-in-hand with the presumption of innocence," counsel explained the beyond a reasonable doubt burden is "the highest burden we have in our society" where a man's liberty is at stake and distinguished it from a civil matter, where money alone may be at stake. He re-emphasized this point by identifying that the framers of the Constitution believed a "very, very high" burden was required to deprive a man or woman of liberty, which requires careful thought and consideration and is not to be taken lightly, as in a coin toss. No venire member responded when counsel asked whether anyone did not understand that concept, felt that it was improper to hold the State to that high burden, or believed it unfair for Appellant to receive the benefit of that burden. Counsel asked several panel members what they thought about reasonable doubt. One replied that, as counsel had noted, "beyond a shadow of a doubt is a whole lot different than reasonable doubt," which the member observed is less than one-hundred percent doubt. Another venire member agreed with this description, stated that he considered reasonable doubt to be "maybe ninety-five [percent doubt]," and also agreed with

counsel's statement, "You'd have to be pretty darned convinced . . . ." Neither the State nor Appellant challenged any venire member for cause. Both the State and Appellant made peremptory challenges.

During its closing, the State again acknowledged that it had the burden of proving each element beyond a reasonable doubt, and discussed both the court's charge and the evidence the State had presented as proof of each element of the offense. The State argued that Appellant knew about and possessed the cocaine found in his wife's purse inside a hotel room where they had been smoking crack cocaine.

In his closing, Appellant provided his analysis of the evidence and credibility of the witnesses, again discussed how high and important the State's burden of proof was, urged the jury to deliberate the case after careful consideration of all of the evidence, and informed the jury that it must "have no reasonable doubt at all" before finding Appellant guilty. Appellant addressed witness credibility and his defensive theory focused in significant part on Appellant's alleged lack of knowledge that marijuana and cocaine were in a secret compartment of his wife's purse and addressed witness credibility. Appellant testified at trial.

The court's charge instructed that if it believed from the evidence beyond a reasonable doubt that Appellant was guilty as charged in the indictment, the jury was to find him guilty as charged, but if it did not so believe, or if it had a reasonable doubt thereof, the jury was to find Appellant not guilty. The charge also instructed:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. . . . . The presumption of innocence alone is sufficient to acquit the defendant, unless the

7

jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "not guilty."

Neither the State nor Appellant objected to the court's charge. The record does not demonstrate that any juror failed to either understand the undefined meaning of "beyond a reasonable doubt," or to hold the State to its burden regarding each element of the offense.

Having considered the entire record, the testimony and physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error, we find the trial court's error in denying Appellant the opportunity to discuss with and compare for the venire members the applicable beyond a reasonable doubt burden of proof to other burdens of proof in non-criminal cases did not have a substantial and injurious effect or influence on the jury's verdict in this case. *Rich*, 160 S.W.3d at 577. We therefore disregard the error. TEX.R.APP.P. 44.2(b). Issue One is overruled.

**CONCLUSION**

The trial court's judgment is affirmed.

GUADALUPE RIVERA, Justice

February 12, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

8