**Affirmed and Opinion Filed December 1, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01342-CR

### No. 05-13-01343-CR

### BRANDON DUNTE LUSTER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 363rd Judicial District Court
### Dallas County, Texas
### Trial Court Cause Nos. F-0920707-W, F10-00689-W

## OPINION

Before Justices FitzGerald, Lang, and Brown
Opinion by Justice FitzGerald

A jury convicted appellant of sexual assault of a child under fourteen and aggravated sexual assault of a child under fourteen and sentenced him to eleven years' imprisonment in the sexual assault case and thirty years' imprisonment in the aggravated sexual assault case. In two issues on appeal, appellant asserts the trial court erred in disallowing a voir dire question and in overruling his hearsay objection to the admission of the child's medical records.[1] Concluding appellant's arguments are without merit, we affirm the trial court's judgments.

---

[1] Appellant waived his Confrontation Clause challenge at oral argument.

**BACKGROUND**

RH, the complaining witness, testified that she began having a sexual relationship with appellant when she was thirteen years old. Appellant was in his thirties. The relationship continued beyond RH's fourteenth birthday, and she became pregnant. RH testified that appellant instructed her to drink vinegar to terminate the pregnancy.

RH's family confronted appellant when they learned of the pregnancy. Appellant was subsequently arrested. Helen Brooks, RH's sister, testified that appellant was angry that RH had not consumed something to terminate the pregnancy.

RH gave birth to appellant's child. After being released from jail, appellant continued having sex with RH, who was still underage. This continued for two years. When she was sixteen years old, RH became pregnant again. DNA testing established appellant as the biological father of the children resulting from both of RH's pregnancies.

Appellant was indicted for sexual assault of RH, and then several months later, he was indicted for a subsequent aggravated sexual assault of RH. The jury found him guilty of both charges and sentenced him to eleven years' imprisonment on the sexual assault charge and thirty years' imprisonment on the aggravated sexual assault charge. Appellant timely perfected this appeal.

**ANALYSIS**

*Was the Voir Dire Question Properly Disallowed?*

In his first issue, appellant asserts the trial judge erred in disallowing a voir dire question "concerning reasonable doubt." The State responds that the voir dire question constituted an improper fishing expedition and was properly disallowed.

The trial court has broad discretion over the process of selecting a jury.[2] Without the trial court's ability to impose reasonable limits, voir dire could go on indefinitely.[3] Therefore, the trial court has discretion concerning the propriety of a particular question, and a reviewing court will not disturb the trial court's decision absent an abuse of discretion.[4] A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry.[5] A question is proper if it seeks to discover a juror's views on an issue applicable to the case.[6] But a voir dire question that is so vague or broad in nature as to constitute a global fishing expedition is improper.[7]

During voir dire, counsel for the defense discussed the various civil and criminal standards of proof. Then, counsel stated:

> Like what would be - - - as a citizen - - - I'm just going to ask you this, as a citizen of Dallas County: Realizing that mistakes are made, that no system is perfect, what would be a reasonable percent of innocent people to get wrongly convicted, would you say, out of the Dallas County criminal justice system?

Counsel for the State objected, and the objection was sustained.

Relying on *Wooldridge v. State*,[8] and *Fuller v. State*,[9] appellant argues that questions concerning reasonable doubt are proper questions for voir dire. While we do not dispute the general proposition, appellant's argument is one of false equivalence. In *Wooldridge*, the court of criminal appeals concluded the trial court erred when it prohibited counsel from asking an

---

[2] *Fuller v. State*, 363 S.W.3d 583, 585 (Tex. Crim. App. 2012) (quoting *Sells v. State*, 121 S.W.3d 748, 756 (Tex. Crim. App. 2003)).

[3] *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).

[4] *Sells*, 121 S.W.3d at 756.

[5] *Id.*

[6] *Id.*

[7] *Id.; see also Woods v. State,* 152 S.W.3d 105, 108 (Tex. Crim. App. 2004).

[8] 827 S.W.2d 900, 906 (Tex. Crim. App. 1992)

[9] 363 S.W.3d 583, 586 (Tex. Crim. App. 2012)

individual venire person if a definition of reasonable doubt was "close to what [she] believed."[10] In *Fuller*, the court concluded counsel was improperly precluded from eliciting the jury's understanding that "proof beyond a reasonable doubt is the highest burden."[11] Conversely, the question in the case at bar had nothing to do with the jury's understanding of the burden of proof. Instead, the question asked the jury to hypothetically quantify the number of wrongful convictions that might be acceptable.[12]

Appellant also contends the question was not an improper commitment question. A commitment question "attempt[s] to bind or commit a prospective juror to a verdict based on a hypothetical set of facts."[13] Commitment questions "require a venireman to promise that he will base his verdict or course of action on some specific set of facts before he has heard any evidence, much less all of the evidence in its proper context."[14] "Although commitment questions are generally phrased to elicit a 'yes' or 'no' answer, an open-ended question can be a commitment question if it asks the prospective juror to set the hypothetical parameters for his decision-making."[15]

Here, regardless of whether the question is characterized as an improper commitment question, we cannot conclude the trial court abused its discretion in disallowing the question. The question in this case is similar to the voir dire question posed in *Lopez v. State*.[16] In *Lopez*, the San Antonio court considered whether the trial court properly disallowed counsel's inquiry about

---

[10] *Wooldridge*, 827 S.W.2d at 903, 906.

[11] *Fuller*, 363 S.W.3d at 585.

[12] At trial, defense counsel informed the judge that had the objection not been sustained, he would have continued his line of questioning by asking the jury to recognize the importance of not convicting innocent persons. This is also too general to characterize as an inquiry concerning the burden of proof.

[13] *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001) (quoting *Allridge v. State*, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991)).

[14] *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005).

[15] *Standefer*, 59 S.W.3d at 180. By way of illustration, the *Standefer* court identified one type of improper commitment question as one that asks, "What circumstances in your opinion warrant the imposition of the death penalty?" *Id*.

[16] No. 04-10-00864-CR, 2012 WL 1453892, at *6 (Tex. App.—San Antonio Apr. 26, 2012, pet. ref'd) (mem. op., not designated for publication).

whether innocent people were in jail. The court concluded that regardless of whether the question was an improper commitment question, the trial court did not abuse its discretion in disallowing it because the question "was so broad in nature as to constitute a global fishing expedition."[17] The question here is similarly flawed. Therefore, we conclude the trial court did not abuse its discretion in disallowing the question. Appellant's first issue is overruled.

### Were Appellant's Objections to the Medical Records Properly Overruled?

In his second issue, appellant argues the trial court erred in overruling his objection to State's exhibit 1, RH's medical records. Appellant complains that an entry in the records stating that he encouraged RH to drink bleach to terminate her pregnancy was hearsay and should not have been admitted.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard.[18] A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles.[19] When considering a trial court's decision to admit or exclude evidence, we will not reverse the ruling unless it falls outside the "zone of reasonable disagreement." [20]

Hearsay is an out-of-court statement offered in evidence for the truth of the matter asserted.[21] Hearsay is inadmissible unless there is an exception allowing for its admission.[22] Hearsay rules provide assurance that evidence introduced at trial will be reliable.[23] Out-of-court statements are typically excluded because they are not made under the usual testimonial

---

[17] *Id.*

[18] *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006).

[19] *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

[20] *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

[21] *See* TEX. R. EVID. 801(d).

[22] *See* TEX. R. EVID. 802.

[23] *Smith v. State*, 88 S.W.3d 652, 658 (Tex. App.—Tyler 2002, pet. ref'd) (citing *California v. Green*, 399 U.S 149, 155 (1970)).

conditions—oath, personal appearance at trial, and cross-examination—and therefore lack the conventional indicia of reliability.[24] But the rules of evidence include a number of exceptions to the general hearsay rule, which allow the admission of specific categories of hearsay.[25] The rationale for allowing exceptions is that certain types of out-of-court statements have been shown to be generally reliable and trustworthy.[26] Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in the Texas Rules of Evidence.[27]

During RH's testimony, the State introduced RH's medical records, which were accompanied by a self-proving business records affidavit. Counsel for the defense objected that the records contained hearsay and violated the Confrontation Clause. The State responded that the records were admissible as an exception to the hearsay rule; specifically, that the statements were made for the purpose of medical diagnosis or treatment.[28] The objection was overruled and the records were admitted into evidence. Defense counsel then stated:

> Judge, there -- there's one portion in there that we object to that says the mother says something, and that -- the mother is not there to give -- whatever the mother says, she -- if the mother says something, she's not making a statement for purposes of medical treatment.

The judge repeated, "Overruled." Counsel for the defense requested and was granted a running objection. The State then read the following portion of the records into evidence:

> Patient states -- patient presents with mom. Patient thinks she might be pregnant and was told by person she was sexually active with, per patient, to drink caster oil and vinegar to terminate pregnancy. Mom was told she was

---

[24] *Green*, 399 U.S. at 158.

[25] TEX. R. EVID. 803, 804.

[26] *Chambers v. Mississippi*, 410 U.S. 284, 298–99 (1973).

[27] TEX. R. EVID. 805.

[28] The State did not argue that the medical records were admissible under the business records exception to the hearsay rule, nor does it advance this argument on appeal. *See* TEX. R. EVID. 902 (10).

told to drink bleach. Patient denies drinking anything. No burn in/around mouth.

Appellant now complains that the mother's statement is "hearsay-within-hearsay-within-hearsay," because the person making the statement to the mother is not identified. But the trial court was not afforded the opportunity to consider this argument. Rather, appellant's only complaint at trial was that the statement was hearsay because it was made by the mother. The objection on appeal must comport with the objection at trial.[29] Therefore, we do not consider the double hearsay issue; our review is limited to whether the mother's statement should have been excluded as hearsay.

One exception to the hearsay rule allows statements for purposes of medical diagnosis or treatment to be admitted.[30] This exception is based on the rationale that a patient will provide accurate information to a doctor in order to receive effective treatment.[31] The proponent of the evidence must show (1) the out-of-court declarant was aware the statements were made for the purpose of medical diagnosis or treatment and that proper diagnosis or treatment depended on the truthfulness of the statements, and (2) the particular statement proffered was pertinent to diagnosis or treatment.[32] The Rule 803(4) exception is not limited to statements made by patients, but the person making the statement must have an interest in proper diagnosis or treatment.[33] Parents normally possess this interest in connection with the well-being of their children.[34]

---

[29] *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002)

[30] *See* TEX. R. EVID. 803(4).Specifically, the rule excludes made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception of general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. TEX. R. EVID. 803(4).

[31] *See Fleming v. State*, 819 S.W.2d 237, 247 (Tex. App.—Austin 1991, writ ref'd).

[32] *See Taylor v. State*, 268 S.W.3d 571, 589–91 (Tex. Crim. App. 2008).

[33] *Sandoval v. State*, 52 S.W.3d 851, 856–57 (Tex. App.—Houston [1st Dist.] 2001, pet ref'd).

[34] *Id.*

Here, RH testified that she tried to terminate the pregnancy by drinking vinegar and castor oil, but it was too late. She stated that her mother took her to the hospital when she was five months pregnant. There is no indication that RH's mother took her to the hospital for any purpose other than medical diagnosis or treatment. According to the medical records, RH informed the examining healthcare professional that she had been instructed to terminate the pregnancy by drinking castor oil or vinegar. The mother then clarified she had been told it was bleach. There can be no dispute that the identity of the substance, if any, ingested by RH to terminate her pregnancy was pertinent to RH's diagnosis and treatment. In fact, the record reflects that following the mother's statement about the ingestion of bleach, the medical professional examined RH for burns. Therefore, the record reflects that the complained-of hearsay falls within the medical diagnosis exception to the hearsay rule.

Because the mother's statement in the records was made for medical diagnosis and treatment, the trial court did not err in overruling appellant's hearsay objection. Appellant's second and third issues are overruled. The trial court's judgments are affirmed.

Do Not Publish
TEX. R. APP. P. 47
131342F.U05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

–8–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRANDON DUNTE LUSTER, Appellant

No. 05-13-01342-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-0920707-W.
Opinion delivered by Justice FitzGerald.
Justices Lang and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered December 1, 2014.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRANDON DUNTE LUSTER, Appellant

No. 05-13-01343-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F10-00689-W.
Opinion delivered by Justice FitzGerald.
Justices Lang and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 1, 2014.