PD-1255&1256&1257-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/2/2015 3:50:51 PM
Accepted 11/3/2015 1:41:11 PM
ABEL ACOSTA
CLERK

**Nos. PD-1255-15, PD-1256-15, and PD-1257-15**

_____

**IN THE TEXAS COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS**

_____

**ELEAZAR LUNA, Appellant**

*v.*

**THE STATE OF TEXAS**

_____

**APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW FROM
THE DECISIONS BY THE THIRTEENTH COURT OF APPEALS IN
CAUSE NUMBERS 13-14-00367-CR, 13-14-00368-CR, and 13-14-00369-CR**

_____

FILED IN
COURT OF CRIMINAL APPEALS

November 3, 2015

ABEL ACOSTA, CLERK

**Richard E. Wetzel
Bar No. 21236300**

**1411 West Avenue, Suite 100
Austin, Texas 78701**

**(512) 469-7943
(512) 474-5594 – fax
wetzel_law@1411west.com**

**Attorney for Appellant
Eleazar Luna**

## Identity of Parties and Counsel

Appellant:                                        Eleazar Luna

Counsel for Appellant at Trial:                   Brent Dornburg
                                                  Attorney at Law
                                                  120 North Main St.
                                                  Victoria, TX
                                                  77901

Counsel for Appellant on Appeal:                  Richard E. Wetzel
                                                  Attorney at Law
                                                  1411 West Ave., Ste. 100
                                                  Austin, TX
                                                  78701

Appellee:                                         State of Texas

Counsel for Appellee at Trial:                    Terry Breen
                                                  Assistant District Attorney
                                                  307 North Gonzales St.
                                                  Cuero, TX
                                                  77963

Counsel for Appellee on Appeal:                   Robert Lassmann
                                                  Assistant District Attorney
                                                  307 North Gonzales St.
                                                  Cuero, TX
                                                  77963

Trial Judge:                                      Hon. Stephen Williams
                                                  24th District Court
                                                  Goliad County

ii

## Table of Contents

**Page**

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . .1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . .1

Statement of Procedural History . . . . . . . . . . . . . . . . . . . . . . . . .3

Questions for Review . . . . . . . . . . . . . . . . . . . . . . . . .4

Argument in Support of First Question for Review . . . . . . . . . . . . . . . . . . . . . . . . .5

Is it permissible for a prosecutor to define the term "reasonable doubt" during voir dire examination of the prospective jurors? (2 RR 67-68)

Argument in Support of Second Question for Review . . . . . . . . . . . . . . . . . . . . . . . . .9

Is the failure of a search warrant affidavit to contain facts supporting an alleged offense meaningless when the affidavit otherwise contains facts of an offense not alleged in the affidavit or found by the magistrate? (3 RR 19)

Argument in Support of Third Question for Review . . . . . . . . . . . . . . . . . . . . . . . . 12

Did the Court of Appeals erroneously find error in the improper admission of hearsay outcry testimony harmless after mischaracterizing the record and finding the evidence sufficient to support the conviction? (3 RR 52-53)

Prayer . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . 19

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . 19

Appendix . . . . . . . . . . . . . . . . . . . . . . . . 19

iii

# Index of Authorities

**Page**

*Borsari v. State*, 919 S.W.2d 913
(Tex. App. – Houston [14th Dist.] 1996, pet. ref'd) . . . . . . . . . . . . . . . . . . .11

*Fuller v. State*, 363 S.W.3d 583
(Tex. Crim. App. 2012) . . . . . . . . . . . . . . . . . . . .7

*Gonzalez Soto v. State*, 267 S.W.3d 327
(Tex. App. – Corpus Christi 2008, no pet.) . . . . . . . . . . . . . . . . . .14

*Haley v. State*, 173 S.W.3d 510
(Tex. Crim. App. 2005) . . . . . . . . . . . . . . . . . .15

*Johnson v. State*, 43 S.W.3d 1
(Tex. Crim. App. 2001) . . . . . . . . . . . . . . . . . .14

*Luna v. State*, 2015 WL 4381353
(Tex. App. – Corpus Christi 2015, pet. filed) . . . . . . . . . . . . . . *passim*

*Motilla v. State*, 78 S.W.3d 352
(Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . .14

*Paulson v. State*, 28 S.W.3d 570
(Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . . . .8

*Samaripas v. State*, 454 S.W.3d 1
(Tex. Crim. App. 2014) . . . . . . . . . . . . . . . . . . .9

*Woolridge v. State*, 827 S.W.2d 900
(Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . . .7

**Statutes**

TEX. CRIM. PROC. CODE art. 18.01(b) . . . . . . . . . . . . . . . . . . .10

TEX. CRIM. PROC. CODE art. 18.01(c) . . . . . . . . . . . . . . . . . . .10

TEX. CRIM. PROC. CODE art. 18.02(10) . . . . . . . . . . . . . . . . . . .10

TEX. CRIM. PROC. CODE art. 38.072 § 2(a)(2) . . . . . . . . . . . . . . . . . . .13

TEX. PEN. CODE § 21.11(a)(2)(A) . . . . . . . . . . . . . . . .2, 3, 9

TEX. PEN. CODE § 21.11(a)(2)(B) . . . . . . . . . . . . . . . . . . . .1

TEX. PEN. CODE §§ 21.02(c)(1)-(7) . . . . . . . . . . . . . . . . . . . .9

**Rules**

TEX. R. APP. P. 9.4 . . . . . . . . . . . . . . . . . . .19

TEX. R. APP. P. 44.2(b)14, 16, 18

TEX. R. APP. P. 47.1 . . . . . . . . . . . . . . . . .7, 11

TEX. R. APP. P. 66.3(c) . . . . . . . . . . . . . . . . .8, 15

TEX. R. APP. P. 66.3(f) . . . . . . . .8, 11, 15, 17, 18

v

**Statement Regarding Oral Argument**

Argument is requested in the event his petition for discretionary review is granted. The questions presented on discretionary review are both legally complex and factually intensive. Argument would be of assistance to the court in the decisional process.

**Statement of the Case 13-14-00367-CR[1] and PD-1255-15**

Eleazar Luna was indicted by a Goliad County grand jury for the offense of indecency with a child by exposure (CR 6). The cause was assigned cause number 13-04-4700-CR in the 24th Judicial District of Goliad County. The indictment alleges that on or about January 25, 2013, Luna caused E.S., a child younger than 17 years of age, to expose her genitals to Luna (CR 6). *See* TEX. PEN. CODE § 21.11(a)(2)(B). A jury was selected and sworn (2 RR 176, 3 RR 20). Luna entered a plea of not guilty (3 RR 24-26). The jury found him guilty as charged in the indictment (4 RR 41). Punishment was tried to the court (5 RR). The court assessed punishment at five years and a fine of $1000 (5 RR 66). The trial court certified Luna's right to appeal (CR 40). Notice of appeal was timely filed (CR 41).

---

[1] In an order dated September 19, 2014, the Court of Appeals directed that the three appeals be consolidated for briefing, issuing orders, and issuing an opinion.

**Statement of the Case 13-14-00368-CR and PD-1256-15**

Eleazar Luna was indicted by a Goliad County grand jury for the offense of indecency with a child by exposure (CR 6).  The cause was assigned cause number 13-04-4701-CR in the 24th Judicial District of Goliad County.   The indictment alleges that on or about January 25, 2013, Luna exposed, for the first time, his genitals to E.S., a child younger than 17 years of age (CR 6).  *See* TEX. PEN. CODE § 21.11(a)(2)(A).  A jury was selected and sworn (2 RR 176, 3 RR 20).  Luna entered a plea of not guilty (3 RR 24-26).  The jury found him guilty as charged in the indictment (4 RR 41).  Punishment was tried to the court (5 RR).  The court assessed punishment at five years and a fine of $1000 (5 RR 66).  The court suspended the imposition of sentence and placed Luna on community supervision for a period of five years (5 RR 66).  The trial court certified Luna's right to appeal (CR 40).  Notice of appeal was timely filed (CR 41).

**Statement of the Case 13-14-00369-CR and PD-1257-15**

Eleazar Luna was indicted by a Goliad County grand jury for the offense of indecency with a child by exposure (CR 6).  The cause was assigned cause number 13-04-4702-CR in the 24th Judicial District of Goliad County.   The indictment alleges that on or about January 25, 2013, Luna exposed, for the last time, his genitals to E.S., a child younger than 17 years of age (CR 6).  *See* TEX. PEN. CODE

2

§ 21.11(a)(2)(A).  A jury was selected and sworn (2 RR 176, 3 RR 20).  Luna entered a plea of not guilty (3 RR 24-26).  The jury found him guilty as charged in the indictment (4 RR 41).  Punishment was tried to the court (5 RR).  The court assessed punishment at five years (5 RR 66).  The court suspended the imposition of sentence and placed Luna on community supervision for a period of five years (5 RR 66).  The trial court certified Luna's right to appeal (CR 40).  Notice of appeal was timely filed (CR 41).

## Statement of Procedural History

Five points of error were presented on direct appeal.  The Court of Appeals affirmed Luna's convictions and sentences in an unpublished opinion.  *Luna v. State*, 2015 WL 4381353 (Tex. App. – Corpus Christi 2015, pet. filed).  Motions for rehearing were timely filed and denied by the Court of Appeals.[2]  Following an extension of time, these petitions are due on or before November 4, 2015.

---

[2]  The arguments presented in these petitions concerning the opinion by the Court of Appeals were first presented to the Court of Appeals in Luna's motions for rehearing.  Without calling for a response from the State, the motions for rehearing were denied by the Court of Appeals three days after they were filed.

3

## Questions for Review

First Question for Review

Is it permissible for a prosecutor to define the term "reasonable doubt" during voir dire examination of the prospective jurors? (2 RR 67-68)

Second Question for Review

Is the failure of a search warrant affidavit to contain facts supporting an alleged offense meaningless when the affidavit otherwise contains facts of an offense not alleged in the affidavit or found by the magistrate? (3 RR 19)

Third Question for Review

Did the Court of Appeals erroneously find error in the improper admission of hearsay outcry testimony harmless after mischaracterizing the record and finding the evidence sufficient to support the conviction? (3 RR 52-53)

**Argument in Support of First Question for Review**

**Is it permissible for a prosecutor to define the term "reasonable doubt" during voir dire examination of the prospective jurors? (2 RR 67-68)**

By his second point of error on direct appeal, Luna complained of erroneous statements of law provided by the prosecutor during voir dire to the prospective jurors. Those misguided statements provided the jurors with a definition of the term beyond a reasonable doubt. By overruling Luna's objections, the trial sanctioned the prosecutor's misstatement of the law (2 RR 68).

Specifically, the record reflects:

MR. BREEN (prosecutor): Now, the definition in the instructions you get will be left undefined as to what beyond a reasonable doubt means. A definition that I know, a judge that I knew used to say in his mind, and this is his opinion, it's that certainty that you would bring to any important –

MR. DORNBURG (defense counsel): Objection, Your Honor. There's not a definition to reasonable doubt.

THE COURT: Overruled. Go ahead.

MR. BREEN: And the example he usually used was when to cross a busy street. We do that all the time, but think about it. If you misjudge you're run over and you get killed. It's a serious decision, right? You don't cross the street until you're certain beyond a reasonable doubt that you can get from one side to the other without getting squished like a bug, so it's a serious question. All right.

Now, as I say, one thing that we do know is beyond a reasonable doubt is not created simply because there's conflicting testimony. That's what a trial is supposed to be about is to resolve conflict; right? Who here feels like, well, you know what, if there's conflicting testimony I couldn't in good conscience vote to convict no matter what? Okay.

Reasonable doubt is not created because there are questions that you have that are never cleared up. You know, if the State proves its case beyond a reasonable doubt even though you wonder about this or wonder about that -- almost certainly there will be such questions that won't be answered by the end of the trial, but that by itself doesn't create reasonable doubt. Does anybody have a problem with that? (2 RR 67-68).

The Court of Appeals found no error in the trial court overruling Luna's trial objection for a variety of reasons. *Luna*, slip op. at 6-9. Initially, the Court mischaracterized Luna's point of error by including portions of the voir dire of which Luna did not complain on appeal. *Luna*, slip op. at 7-8. Namely:

Another way of saying beyond a reasonable doubt is beyond a shadow of a doubt. It's called the Perry Mason standard. It doesn't exist, but sometimes people say that it has to be beyond a shadow of a doubt or beyond any possibility no matter how remote or absurd. It has to be proved beyond any possibility no matter how remote or absurd. If there's any possibility, no matter how remote or absurd, then I would have to vote not guilty.

Who feels that way? Before you can convict, the State would have to prove its case beyond any possibility, no matter how remote or how absurd? Okay. That's just another way of saying beyond a reasonable doubt really. Is there anybody here that feels they could not convict a

6

man unless we established guilt beyond all doubt? Who's going to hold us to that standard?

A review of both Luna's opening brief and reply brief reveals he did not challenge the two above quoted paragraphs as being improper (Appellant's opening brief at 31-34 and reply brief at 3-5). Indeed, he concedes they were permissible absent the complained of definitions erroneously provided by the prosecutor.

Rather than address the claim as presented on appeal, the Court of Appeals reshaped Luna's claim with a strawman argument including permissible statements in voir dire which were not challenged by Luna. The Court of Appeals should have addressed the claim as presented rather than soften or obfuscate the error by including matters not challenged on appeal. The failure of the Court of Appeals to address the claim presented by Luna is contrary to its duty to address the issues he raised on appeal. *See* TEX. R. APP. P. 47.1. Review is warranted because the Court of Appeals, by recrafting Luna's complaint, so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision. *See* TEX. R. APP. P. 66.3(f).

The Court of Appeals further found no error in the challenged voir dire under *Fuller v. State*, 363 S.W.3d 583 (Tex. Crim. App. 2012) and *Woolridge v.*

7

*State*, 827 S.W.2d 900 (Tex. Crim. App. 1992). *Luna*, slip op at 8. However, careful examination of those opinions reflects neither is applicable to the claim now presented. Both opinions concern improper limitation on voir dire in the questioning of prospective jurors on their understanding of the term reasonable doubt. *Fuller*, 363 S.W.3d at 586 and *Woolridge*, 827 S.W.2d at 906. Luna did not complain of questioning the prospective jurors on their understanding of the term "reasonable doubt." Neither *Fuller* nor *Woolridge* sanction the State being allowed to define the term "reasonable doubt" during voir dire examination. Review is warranted because the Court of Appeals, by misstating the holdings of two relatively straightforward opinions by this Court, so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision. *See* TEX. R. APP. P. 66.3(f).

Luna argues the prosecutor's statements plainly ran afoul of the prohibition imposed by *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000) (prohibiting juries from being instructed on a definition of the term reasonable doubt). The failure of the Court of Appeals to recognize and acknowledge the impropriety of the voir dire examination concerns an important question of state law on which the Court of Appeals decided the matter in conflict with this Court's opinion in *Paulson*. Review is warranted under TEX. R. APP. P. 66.3(c). This Court should grant discretionary review, recognize the error, and remand the

8

causes to the Court of Appeals for a harm analysis of the error.  *See Samaripas v. State*, 454 S.W.3d 1, 6 (Tex. Crim. App. 2014) (remanding for a harm analysis after Court of Appeals failed to recognize error during voir dire process).

**Argument in Support of Second Question for Review**

**Is the failure of a search warrant affidavit to contain facts supporting an alleged offense meaningless when the affidavit otherwise contains facts of an offense not alleged in the affidavit or found by the magistrate? (3 RR 19)**

In his third point of error, Luna argued the "mere evidence" search warrant affidavit failed to allege sufficient facts to establish probable cause that he committed the specific offense of continuous sexual abuse of a young child as alleged in the affidavit and found by the magistrate.  The underlying offense of indecency with a child by exposure is not a predicate offense of continuous sexual abuse of a young child.  *See* TEX. PEN. CODE §§ 21.02(c)(1)-(7), 21.11(a)(2)(A) and (B).  Absent facts alleging the predicate offense, the magistrate was not presented with facts supporting probable cause to believe Luna committed the offense of continuous sexual abuse of a young child.  Consequently, it was urged by Luna the trial court abused its discretion by denying Luna's motion to suppress evidence recovered upon execution of the search warrant.

9

A search warrant cannot issue unless supported by an affidavit stating probable cause for the issuance of the warrant. TEX. CRIM. PROC. CODE art. 18.01(b). In the case of a "mere evidence" search warrant under art. 18.02(10), the affidavit must set forth sufficient facts to establish probable cause that a specific offense has been committed. TEX. CRIM. PROC. CODE art. 18.01(c).

The Court of Appeals rejected Luna's point of error because it was unwilling to find the affiant's erroneous conclusion of law as to what offense Luna committed was sufficient to invalidate the search warrant. *Luna*, slip op. at 11. Luna has no strong disagreement with such a determination provided the affidavit contains sufficient information for the magistrate to find probable cause for the charged offense.

However, the determination made by the Court of Appeals does not address the complaint Luna presented on appeal. Luna has clearly and consistently argued the search warrant affidavit is insufficient to support the magistrate's determination Luna committed the offense of continuous sexual abuse of a young child (Appellant's opening brief at 40-44 and reply brief at 7-9). Indeed, even the State conceded the facts alleged were not sufficient to allege Luna committed the offense of continuous sexual abuse of a young child (State's brief at 21).

10

Rather than address a claim not presented, Luna sought for the Court of Appeals to address his point of error urging probable cause for the offense of continuous sexual abuse of a young child was not alleged in the search warrant affidavit presented to the magistrate. The failure of the Court of Appeals to address the claim presented by Luna is contrary to its duty to address the issues he raised on appeal. *See* TEX. R. APP. P. 47.1. Review is warranted because the Court of Appeals, by ignoring Luna's plainly stated complaint on appeal, so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision. *See* TEX. R. APP. P. 66.3(f).

The Court of Appeals cited *Borsari v. State*, 919 S.W.2d 913 (Tex. App. – Houston [14th Dist.] 1996, pet. ref'd), as supporting its disposition of the Luna's third point of error. Upon close examination, *Bosari* provides no such support. There, the defendant challenged a warrant on the basis the underlying affidavit failed to allege facts showing probable cause to believe he committed the alleged offense of attempted capital murder. *Borsari*, 919 S.W.2d at 917. Upon rejecting the challenge, the Court observed that the affiant alleged facts sufficient to support a reasonable inference that Borsari committed an inchoate offense, of either an attempt or a solicitation, in anticipation of committing capital murder. *Bosari*, 919 S.W.2d at 918. In contrast to *Bosari*, Luna's affidavit provides no facts supporting the allegation of continuous sexual abuse of a young child.

11

The thrust of Luna's claim is that the magistrate was not provided with sufficient facts to support the magistrate's probable cause determination that Luna committed the offense of continuous sexual abuse of a young child. This Court should grant discretionary review, find the search warrant affidavit deficient, and remand the causes to the Court of Appeals to conduct a harm analysis of the error.

**Argument in Support of Third Question for Review**

**Did the Court of Appeals erroneously find error in the improper admission of hearsay outcry testimony harmless after mischaracterizing the record and finding the evidence sufficient to support the conviction? (3 RR 52-53)**

On January 25, 2013, E.S.'s mother received a telephone call from the principal at her daughter's school (3 RR 40). She went to school, picked up E.S., and took her home (3 RR 42).

Outside the presence of the jury, E.S.'s mother said that E.S. told her that Luna had shown her pornographic movies and exposed himself to her (3 RR 44). E.S. was taken by her mother to speak with a deputy sheriff (3 RR 45). At the Sheriff's Office, E.S. further described the movies and a sex toy (3 RR 45). E.S. told the deputy that Luna exposed himself to her twice and she exposed herself to Luna once (3 RR 46). She told the deputy that Luna had offered her the use of a

12

sex toy and some lotion if she was so inclined (3 RR 50). E.S. was making the statements to the deputy and her mother while her mother was present (3 RR 51).

Luna objected to the admissibility of any statements made to the deputy at the Sheriff's Office because those statements were not the first statements made to an individual over the age of 18 (3 RR 52). The first such statements had been made at home by E.S. to her mother (3 RR 52). The trial court disagreed and admitted the evidence over objection (3 RR 52).

Back in the presence of the jury, E.S.'s mother testified that upon arriving home from school, E.S. told her that Luna had shown her inappropriate videos and exposed himself to her on two occasions (3 RR 54). E.S.'s mother drove her daughter to the Sheriff's Office and E.S. was interviewed by an officer (3 RR 55). Before the officer, E.S. repeated that Luna had shown her his privates and shown her inappropriate videos (3 RR 55). She also said Luna had shown her a sex toy and some lotion she could use (3 RR 55). She told the officer the sex toy looked like a boys privates (3 RR 56). She claimed Luna told her he had some pornographic videos in his camper that she could watch (3 RR 56).

In his fifth point of error, Luna maintained the outcry testimony from E.S.'s mother as to the statements made by E.S. to the deputy was inadmissible under TEX. CRIM. PROC. CODE art. 38.072 § 2(a)(2). Having previously described the

13

incident to her mother, further outcry to the deputy was inadmissible and the trial court should not have allowed the jury to hear such harmful and inadmissible evidence.

The Court of Appeals assumed the admission of the outcry to the deputy to be an abuse of discretion, but found the error harmless. *Luna*, slip op. at 14. Initially, the Court of Appeals found the error harmless because the testimony of E.S. alone was sufficient to support Luna's convictions. *Luna*, slip op. at 14. The Court cited *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App. – Corpus Christi 2008, no pet.) for the proposition the testimony of a child complainant is sufficient to support a conviction for indecency with a child. However, Luna's claim is not one of sufficiency of the evidence, but rather his complaint goes to error in the improper admission of hearsay evidence.

Luna acknowledges that evidence of guilt is a factor in conducting a TEX. R. APP. P. 44.2(b) harm analysis. *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). However, it is not the only factor. The admission of inadmissible hearsay constitutes non-constitutional error subject to the harm analysis rule under TEX. R. APP. P. 44.2(b) which requires the reviewing court to disregard non-constitutional error that does not affect a criminal defendant's substantial rights. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001).

14

In assessing the likelihood that the jury's decision was adversely affected by an error, an appellate court should consider everything in the record, including: (1) any testimony or physical evidence admitted for the jury's consideration; (2) the nature of the evidence supporting the verdict; (3) the character of the error; (4) how it might be considered in connection with other evidence in the case; (5) the jury instructions; (6) the State's theory; (7) any defensive theories; (8) closing arguments; (9) voir dire; and (10) whether the State emphasized the error. *Haley v. State*, 173 S.W.3d 510, 518-519 (Tex. Crim. App. 2005).

Here, the Court of Appeals failed to consider the above mentioned harm factors upon simply observing E.S.'s testimony alone is sufficient to support the convictions. While that is a consideration of the harm attendant to the error, it is not enough standing alone to render the error harmless. Other factors, as mentioned above have a direct bearing on the harmfulness of the error. The failure by the Court of Appeals to consider the relevant harm factors was contrary to a multitude of opinions by the Court of Criminal Appeals including *Haley* as cited above. That failure warrants the granting of review under both TEX. R. APP. P. 66.3(c) and 66.3(f).

Luna submits that after examining the record of his trial as a whole, the Court of Appeals, had it properly addressed the claim, could not have fair

15

assurance that the error in question did not have a substantial and injurious effect or influence in determining the jury's verdict that Luna was guilty of the charges involving E.S. In making its evaluation of the harmfulness of the error, the Court of Appeals should have followed this Court's construct for a proper TEX. R. APP. P. 44.2(b) review have been mindful of the following: (1) Luna's defensive theory at trial was that E.S. had fabricated the accusations (4 RR 15); (2) the State made reference to the improperly admitted outcry evidence in its opening statement (3 RR 28); (3) E.S.'s credibility was a contested factor at trial (3 RR 160, 189-197); (4) the State presented no physical evidence to support the allegations of indecent exposure by Luna or E.S.; (5) the trial court instructed the jury it was the exclusive judge of the facts proven, credibility of the witnesses, and weight to be given the testimony (CR 34); and (6) the State made reference to the improperly admitted outcry testimony during closing argument in urging the jury to return three guilty verdicts (4 RR 34).

The Court of Appeals further found the error harmless because Luna was afforded a full opportunity to cross-examine E.S. *Luna*, slip op. at 14. Luna disputes that assessment of record.

The record reflects that after making an outcry to her mother, E.S.'s mother took her to the sheriff's office where she told a deputy some more of what

16

happened (3 RR 84-85). At trial on cross-examination, E.S. testified that she could not remember what she told the deputy (3 RR 93). She repeated that she could not remember any of what she said at the sheriff's office (3 RR 96).

In view of E.S.'s inability to remember what she told the deputy, Luna was not afforded a full and fair opportunity to cross-examine E.S. concerning her alleged outcry to the deputy. The Court of Appeals mischaracterization of the record warrants the grant of discretionary review under TEX. R. APP. P. 66.3(f).

Finally, the Court of Appeals found the error harmless because E.S. testified to the same facts contained within the erroneously admitted outcry testimony. *Luna*, slip op. at 14. Once again, Luna disputes that assessment of record.

The record reflects that after making an outcry to her mother, E.S.'s mother took her to the sheriff's office where she told a deputy some more of what happened (3 RR 84-85). At trial on cross-examination, E.S. testified that she could not remember what she told the deputy (3 RR 93). She repeated that she could not remember any of what she said at the sheriff's office (3 RR 96).

In view of E.S.'s inability to remember what she told the deputy, it is difficult to understand how the Court of Appeals could determine E.S. testified to the content of her outcry to the deputy. E.S. did not testify to the same facts

17

contained within the erroneously admitted outcry statement and was merely able to confirm she spoke with the deputy.

The Court of Appeals mischaracterization of the record warrants the grant of discretionary review under TEX. R. APP. P. 66.3(f). This Court should grant discretionary review and remand to the Court of Appeals for a proper and full harm review under TEX. R. APP. P. 44.2(b) while being true to the record.

## Prayer

Luna prays the Court will grant his petition for discretionary review and reverse his convictions, remand to the Court of Appeals, or enter any other relief appropriate under the law and the facts.

Respectfully submitted,

s/Richard E. Wetzel
Richard E. Wetzel
Bar No. 21236300

1411 West Avenue, Suite 100
Austin, Texas 78701

(512) 469-7943
(512) 474-5594 – fax
wetzel_law@1411west.com

Attorney for Appellant
Eleazar Luna

18

## Certificate of Compliance

This pleading complies with TEX. R. APP. P. 9.4. According to the word count function of the computer program used to prepare the document, it contains 3,287 words excluding the items not to be included within the word count limit.

/s/ Richard E. Wetzel
Richard E. Wetzel
State Bar No. 21236300

## Certificate of Service

This is to certify a true and correct copy of this pleading was mailed to counsel for the State of Texas, Robert Lassmann, Assistant District Attorney, DeWitt County Courthouse, 307 N. Gonzales St., Cuero, Texas, 77954, and Lisa McMinn, State Prosecuting Attorney, at her email address of information@spa.texas.gov on this the 2nd day of November, 2015.

/s/Richard E. Wetzel
Richard E. Wetzel
Bar No. 21236300

## Appendix



NUMBER 13-14-00367-CR
NUMBER 13-14-00368-CR
NUMBER 13-14-00369-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ELEAZAR LUNA,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                             Appellee.

On appeal from the 24th District Court
of Goliad County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes**
**Memorandum Opinion by Justice Benavides**

In this consolidated appeal, appellant Eleazar Luna challenges his convictions on

three separate indictments for indecency with a child, each third-degree felonies.[1]    *See*

---

[1] The following appellate cause numbers are at issue in this case:  13-14-00367-CR; 13-14-

TEX. PENAL CODE ANN. 21.11(a)(2) (West, Westlaw through Chapter 46 2015 R.S.). By five issues, which we address as three, Luna asserts that: (1) the trial court abused its discretion by overruling his objections to the State's arguments during jury voir dire; (2) the trial court erred by denying his pre-trial motion to suppress; and (3) the trial court erred by admitting an outcry statement. We affirm.

## I. BACKGROUND

The State alleged that Luna committed indecency with his next door neighbor's daughter, E.S. ("Child E"),[2] on three separate occasions, in Goliad, Texas. Luna pleaded not guilty and was tried before a jury on the issue of guilt-innocence.

T.B. ("Mother"), Child E's mother, testified that she lived next door to Luna in Goliad. According to Mother, Child E's school principal called her into her office one afternoon while Child E was in third grade. Mother testified that the reason for the meeting was because the principal learned that Child E had made an inappropriate, sexually-related comment to a fellow classmate. Mother testified that after this particular meeting with the principal, Child E told her that Luna had shown her pornography at his house, exposed his genitals to her, and asked her to expose her genitals to him. Mother stated that she then alerted the Goliad County Sheriff's Department.

Child E, who was ten years old at the time of trial, testified that Luna was her next door neighbor and described him as a "really nice person." Child E told jurors that she frequently visited Luna's home and spent time with his granddaughters who would visit

---

00368-CR; and 13-14-00369-CR.

[2] We will use aliases in order to protect the minor's identity.

2

him occasionally. Child E stated, however, that the summer going into third grade, Luna first spoke to her about sex. Subsequently, Luna began showing pornography to Child E on his television, iPad, or iPhone whenever the two were at Luna's home alone. According to Child E, Luna also possessed a "sex toy that was a boy's private" that would vibrate. Child E said that he never used the toy, but showed it to her and told her that it was available for her use whenever she was ready. Luna also showed Child E some "lotion" that accompanied the sex toy. Child E testified that while Luna showed her pornography, "[h]e would pull his private out of his pants and start touching himself." During this testimony, Child E demonstrated Luna's actions with her hands for the jurors. Child E recalled that on one occasion at Luna's home, Luna asked her to pull her pants down, and she complied by pulling her pants and underwear down, thereby exposing her genitals to him. Child E testified that Luna advised her that if she told anyone about what had happened, they would "both be in a lot of trouble." Child E admitted that the reason she made the inappropriate comment to her classmate was so that the classmate would tell the principal, and give Child E an opportunity to tell someone about Luna's actions.

Luna testified in his defense and denied ever exposing himself to Child E, or asking Child E to expose herself to him. Luna testified that about "four or five [times]" he caught Child E watching pornography on his television. Luna stated that he scolded Child E for watching it, but did not tell Mother because he did not want to get Child E in trouble.

The jury found Luna guilty as charged on each indictment. After the punishment phase of trial, the trial court assessed Luna's punishment on appellate cause number 13-14-00367-CR at five years' imprisonment with the Texas Department of Criminal Justice—Institutional Division (TDCJ-ID), fined him $1,000, and assessed court costs.

3

On the remaining two charges (appellate cause numbers 13-14-00368-CR and 13-14-00369-CR), the trial court also assessed five years imprisonment with TDCJ-ID for each charge, fined him $1,000 for each charge, and assessed court costs. The trial court further suspended the sentences on cause numbers 13-14-00368-CR and 13-14-00369-CR and placed Luna on community supervision, to be served concurrently with his sentence in appellate cause number 13-14-00367-CR. This appeal followed.

## II.     JURY VOIR DIRE

By his first two issues, which we treat as one issue, Luna asserts that the trial court abused its discretion by allowing the State to make certain arguments during jury voir dire.

### A.  Standard of Review

The trial court has broad discretion over the process of selecting a jury. *Fuller v. State*, 363 S.W.3d 583, 585 (Tex. Crim. App. 2012). We leave to the trial court's discretion the propriety of a particular question and will not disturb the trial court's decision absent an abuse of discretion. *Id.* A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry. *Id.* A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.* However, a voir dire question or hypothetical that misstates the law is improper. *Thompson v. State*, 95 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2002, no pet.). A prosecutor's statements during voir dire will not constitute error, so long as they do not going beyond the court's charge. *See Wilder v. State*, 111 S.W.3d 249, 253 (Tex. App.—Texarkana 2003, pet. ref'd). Finally, any erroneous ruling on issues related to questions during jury voir dire are non-constitutional error and subject to a harm analysis. *See* TEX. R. APP.

4

P. 44.2(b); *Fuller*, 363 S.W.3d at 589; *Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005).

## B. Discussion

Luna first argues that the trial court improperly overruled his objection to the State's argument to prospective jurors that the date of commission of the offenses as alleged in the indictments were meaningless.   The relevant exchange took place during voir dire:

[Prosecutor]:   We also -- now, one indictment says that this was the first time he did this. Another indictment says it was the last time he did this. In order to differentiate different events, all of these indictments read that it happened on or about the 25th of January, 2013, but on or about is a term of art. It doesn't mean what it means normally.

Normally if you say on or about the 25th of January, most of you would probably say within a week, I'm supposing, of the 25th of January, but in the law, it means any time within the statutory, statute of limitations, which doesn't run for many years now, so this really is any time – [Child E] I think is now 10, on up until before the indictment. In other words, at any time.

The date effectively doesn't mean anything in this indictment. So my first question is who here has a problem with that that they feel like the State should have to—

[Defense Counsel]: I'm going to object. He says the date doesn't effectively mean anything.

[Prosecutor]:   In this case, it doesn't mean anything because the statute of limitations has not run and would therefore go from the day of her birth on up to before the indictment.

THE COURT:   Overruled, go ahead.

. . . .

5

[Defense Counsel]: Additionally up to the point date of indictment is to -- that makes it pertinent as well, so it is important. You can't say it's not effective. That is a misstatement of law. It has no effect.

THE COURT: All right. Overruled. Go ahead.

We do not read the State's objected-to arguments as expansively or liberally as Luna asserts. Article 21.02(7) of the code of criminal procedure mandates that the time mentioned in the indictment "must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation. TEX. CODE CRIM. PROC. ANN. art. 21.02 (West, Westlaw through Chapter 46 2015 R.S.). The State qualified its "date" argument by arguing that under the law, the date in the indictment must be within the statutory limitations period, and in this case, the date was within the limitations period and not so remote that prosecution of the indecency with a child offense would be barred by limitations." *See id.* art. 12.01(1)(E) (providing that no time limitation exists for the prosecution of the offense of indecency with a child pursuant to section 21.11 of the penal code). Accordingly, we conclude that this was not an improper statement of the law, and the trial court did not abuse its discretion in overruling Luna's objection.

Next, Luna argues that the trial court abused its discretion by allowing the prosecutor to give prospective jurors a definition of the term "proof beyond a reasonable doubt." The following exchange during voir dire is at issue:

[Prosecutor]: Now, the definition in the instructions you get will be left undefined as to what beyond a reasonable doubt means. A definition that I know, a judge that I knew used to say in his mind, and this is his opinion, it's that certainty that you would bring to any important –

6

| | |
|---|---|
| [Defense Counsel]: | Objection, Your Honor. There's not a definition to reasonable doubt. |
| THE COURT: | Overruled. Go ahead. |
| [Prosecutor]: | And the example he usually used was when to cross a busy street. We do that all the time, but think about it. If you misjudge you're run over and you get killed. It's a serious decision, right? You don't cross the street until you're certain beyond a reasonable doubt that you can get from one side to the other without getting squished like a bug, so it's a serious question. All right. |
| | Now, as I say, one thing that we do know is beyond a reasonable doubt is not created simply because there's conflicting testimony. That's what a trial is supposed to be about is to resolve conflict; right? Who here feels like, well, you know what, if there's conflicting testimony I couldn't in good conscience vote to convict no matter what? Okay. |
| | Reasonable doubt is not created because there are questions that you have that are never cleared up. You know, if the State proves its case beyond a reasonable doubt even though you wonder about this or wonder about that -- almost certainly there will be such questions that won't be answered by the end of the trial, but that by itself doesn't create reasonable doubt. Does anybody have a problem with that? |
| | Another way of saying beyond a reasonable doubt is beyond a shadow of a doubt. It's called the Perry Mason standard. It doesn't exist, but sometimes people say that it has to be beyond a shadow of a doubt or beyond any possibility no matter how remote or absurd. It has to be proved beyond any possibility no matter how remote or absurd. If there's any possibility, no matter how remote or absurd, then I would have to vote not guilty. |

7

> Who feels that way? Before you can convict, the State would have to prove its case beyond any possibility, no matter how remote or how absurd? Okay. That's just another way of saying beyond a reasonable doubt really. Is there anybody here that feels they could not convict a man unless we established guilt beyond all doubt? Who's going to hold us to that standard?

Luna argues that the State prosecutor's statements regarding reasonable doubt were misstatements of the law, and "interfered with the juror's ability to determine for themselves the meaning of proof beyond a reasonable doubt." We disagree.

The court of criminal appeals has held that while "the better practice is to give no definition of reasonable doubt at all to jury," *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000),

> the fact that no definition will be provided for a term does not render a prospective juror's understanding of that term irrelevant. To the contrary, that understanding becomes more crucial to the intelligent exercise of either the State's or the defendant's peremptory challenges because there is no definition to guide what could be a juror's skewed perception of the term.

*Fuller*, 363 S.W.3d at 586 (quoting *Woolridge v. State*, 827 S.W.2d 900, 906 (Tex. Crim. App. 1992)).

In this case, the State's prosecutor prefaced his statements by noting that "beyond a reasonable doubt" was undefined. The State's prosecutor then led into his ultimate questions regarding how the prospective jurors would apply the State's burden of proof by offering examples of what reasonable doubt does not mean or require of the State. We hold that this line of questioning was relevant, not a misstatement of the law, not repetitious, and not improper. *See Woolridge*, 827 S.W.2d at 906. As a result, the trial court did not abuse its discretion in overruling Luna's objection. Luna's first and second

8

issues are overruled.

### III. MOTION TO SUPPRESS

By his third and fourth issues, which we will address together, Luna asserts that the trial court erred by denying his motion to suppress.

### A. Standard of Review and Applicable Law

In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When the trial court does not make explicit findings of fact, we infer the necessary factual findings that support the trial court's ruling if the record evidence (viewed in light most favorable to the ruling) supports these implied facts. *Johnson*, 414 S.W.3d at 192.

Motions to suppress are reviewed pursuant to a bifurcated standard under which the trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *Id.* But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo. *Id.* (citing *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. 2013); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.

9

*Id.*  Once the defendant has made this showing, the burden of proof shifts to the State where it is required to show that the search or seizure was conducted pursuant to a warrant or was reasonable.  *Id.*  If the State produces evidence of a warrant, the burden of proof shifts back to the defendant to show the invalidity of the warrant.  *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986).  In this case, the State showed that the search in this case was conducted pursuant to a warrant; thus, the burden rests with Luna to show that the warrant is invalid.  *See id.*

**B. Discussion**

**1. Incorrect Offense**

Luna first argues that the probable cause affidavit used to obtain the search warrant of Luna's home is invalid because it fails to state facts showing probable cause to believe that Luna committed the offense of continuous sexual abuse of a young child, as alleged in the State's probable cause affidavit.

The probable cause affidavit, prepared by Goliad County Sheriff's Investigator James Garner, stated the following:

> On Friday, January 25, 2013, female victim, age 9 years of age made an outcry at the Goliad Elementary School to School Counselors, of Continuous Sexual Abuse of a Child.  School personnel contacted the victim's mother, who in Turn brought victim to the Goliad County Sheriff's office where an initial statement was taken and a C.A.C. Forensic Interview was scheduled with The Harbor Children's Alliance and Advocacy in Port Lavaca, Texas for Tuesday January 29, 2013.  During the Forensic interview, conducted by Maria Flores and recorded on DVD, victim stated that sometime between her 2nd Grade year and 3rd Grade year of school, in the summer time while visiting suspect Eleazar Luna . . . at his home residence . . . in Goliad County, Texas, through sometime in November 2012, before Thanksgiving, suspected repeatedly showed her pornographic movies, and exposed his penis to her, masturbating in front of her, and on at least one occasion, had the victim remove her shorts and panties, exposing her anus and sexual organs to the suspect.  Suspect Luna also

10

exhibited a sex toy (vibrator) and lotion to the victim stating that she could use these if she would like. Because of the initial outcry and subsequent C.A.C. interview it is requested that a search and arrest warrant for suspect Eleazar Luna be issued.

Garner's affidavit also opined—and the magistrate agreed—that probable cause existed that Luna committed the offense of continuous sexual abuse of a child, *see* TEX. PENAL CODE ANN. § 21.02 (West, Westlaw through Chapter 46 2015 R.S.), instead of indecency with a child, the crime for which he was ultimately charged. *See id.* § 21.11(a)(2).

Luna fails to demonstrate how Investigator Garner's purported incorrect conclusion of law as to which offense Luna committed operates to invalidate an otherwise valid warrant containing probable cause. *See Borsari v. State*, 919 S.W.2d 913, 917 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (holding that appellant did not meet his burden to invalidate a warrant in which the affiant believed appellant had committed attempted capital murder rather than solicitation of capital murder); *see also* 40 GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 9:39 (3d ed. 2011) ("Technical details of the conclusions drawn by the affiant do not control." (referencing the *Borsari* case)). Accordingly, we overrule Luna's third issue.

### 2. Staleness

Luna next argues that "stale information" within the probable cause affidavit rendered the affidavit deficient to state facts showing probable cause to believe Luna committed the offense alleged.

A request for a search warrant must contain facts presented to a magistrate that probable cause does in fact exist for its issuance. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (West, Westlaw through Chapter 46 2015 R.S.). Among other requirements,

11

the affidavit must set forth facts that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. *Id.* § 18.01(c)(3). These allegations are sufficient if they would justify a conclusion that the object of the search is probably on the premises. *Ramos v. State*, 934 S.W.2d 358, 363 (Tex. Crim. App. 1996). Moreover, the facts relied on must not have become "stale" by the time the warrant issued. *Burke v. State*, 27 S.W.3d 651, 653 (Tex. App.—Waco 2000, pet. ref'd). This means that the affidavit must show that the act or event upon which probable cause is based occurred within a reasonable time prior to the making of the affidavit. *Id.* The amount of delay that will make information stale for search warrant purposes depends upon the particular facts of a case, including the nature of criminal activity and the type of evidence sought. *Ellis v. State*, 722 S.W.2d 192, 196 (Tex. App.—Dallas 1986, pet. ref'd). Mechanically counting days is of little assistance in this determination, but, rather, common sense and reasonableness must prevail, with considerable deference to be given to the magistrate's judgment based on the facts before him, absent arbitrariness. *Id.* at 196–97.

Here, Investigator Garner's probable cause affidavit states that Luna committed the alleged acts sometime during the summer of Child E's transition from second grade to third grade through "sometime in November 2012." The search warrant then issued some two months later on January 30, 2013. Garner alleged that Luna's conduct toward Child E occurred over a period of time and involved items that are likely stored privately in Luna's home, and not typically disposed of after use, such as the pornography, a vibrating sex toy, and lotion. Based upon the facts of this case, we conclude that such allegations in Investigator Garner's affidavit are not stale so as to render it deficient or

12

invalid.  *See id.*  As a result, we overrule Luna's fourth issue.

## IV. OUTCRY STATEMENT

By his final issue, Luna contends that the trial court abused its discretion by admitting evidence of Child E's outcry statement given to a law enforcement officer, after she had already made an outcry statement to Mother.

### A. Applicable Law and Standard of Review

In a prosecution for indecency with a child younger than fourteen years of age or a person with a disability, an outcry statement made to the first person, age eighteen or older, other than the defendant, to whom the child or person with a disability made a statement about the offense, is not inadmissible because of the hearsay rule, *see* TEX. R. EVID. 802, if statutory notice requirements are given to the adverse party, the trial court finds in a hearing conducted outside the presence of the jury that the statement is reliable based on the time, content, and circumstances of the statement, and the child or person with a disability testifies or is available to testify at the proceeding in court or in any other manner provided by law.  *See* TEX. CODE CRIM. PROC. art. 38.072 (West, Westlaw through Chapter 46 2015 R.S.).

We review a trial court's decision to admit an outcry statement for abuse of discretion.  *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990).  Thus, we will uphold the trial court's ruling if it is within the zone of reasonable disagreement.  *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  Any finding of an abuse of discretion for admitting inadmissible hearsay constitutes non-constitutional error, and will be reviewed to determine whether the error affected the appellant's substantial rights.  *See* TEX. R. APP. P. 44.2(b); *see also Johnson v. State*, 967 S.W.2d

13

410, 417 (Tex. Crim. App. 1998) ("A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect.").

### B. Discussion

Luna argues that the trial court abused its discretion by admitting inadmissible hearsay outcry testimony from Mother related to statements made by Child E to the Goliad County Sheriff's Department because those statements were not the first statements made to an individual over the age of eighteen, in order to be admissible under article 38.072.

Assuming without deciding that the trial court abused its discretion by admitting this outcry testimony, we nevertheless conclude that any error related to this testimony was harmless. Child E testified at trial, without objection, and outlined the same allegations against Luna that were testified to in the outcry statement to the Goliad County Sheriff's Department. Additionally, Child E was subject to detailed cross-examination about her allegations against Luna. Moreover, the law is clear that the testimony of a child sexual abuse victim is sufficient to support a conviction for indecency with a child. *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.) (internal citations omitted).

After reviewing this record as a whole, we have fair assurance that any error on admitting Mother's outcry testimony did not influence the jury, or had but a slight effect to make it harmless. *See, e.g., Allen v. State*, 436 S.W.3d 815, 822 (Tex. App.—Texarkana 2014, pet. ref'd) (finding harmless error in admitting improper outcry witness testimony when the child complainant testified to the same facts contained in the outcry

14

statement and was subject to cross examination).    Accordingly, we overrule Luna's final issue.

## V. CONCLUSION

We affirm the trial court's judgments.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
16th day of July, 2015.